519 So.2d 1082 (1988)
Emmanuel WARD, Appellant,
v.
STATE of Florida, Appellee.
No. BG-449.
District Court of Appeal of Florida, First District.
February 1, 1988.
*1083 Michael E. Allen, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from the judgment and sentence entered pursuant to a jury verdict finding appellant guilty of lewd assault. Appellant challenges the trial court's admission of a psychologist's expert opinion that the child/victim exhibited symptoms consistent with those of sexually abused children. We find no error and affirm.
Appellant was charged by information with attempted sexual battery on a child, aged 11 or younger, a violation of Sections 794.011(2) and 777.04(1), Florida Statutes. Prior to trial, appellant filed a motion in limine to prevent Evelyn Roberts Goslin, Ph.D., a clinical psychologist, from testifying. Defense counsel contended that Dr. Goslin's report consisted of hearsay and conclusion which invaded the province of the jury.
During an in camera proffer,[1] Dr. Goslin testified that she had evaluated the child psychologically by taking a history from the child's mother and by conducting an intellectual assessment test and a personality test. The child, who was almost six years old at the time of the evaluation, was found by Dr. Goslin to test out "normal" under the intellectual assessment test,[2] but to have exhibited anxiety and fear in the personality test.[3] Dr. Goslin then testified that the mother stated the child had been complaining of stomachaches, had experienced frequent sleep disturbances, and had become more dependent of late.
After testifying to having studied symptoms of children who have been sexually abused, Dr. Goslin outlined three general types of symptoms displayed[4] and testified that in her opinion the child displayed the symptoms typically seen in children who have been sexually abused.
On cross-examination, Dr. Goslin admitted that her opinion was based partially on her belief that the child was telling the truth and that without such a belief she would not be able to identify the source of the trauma as sexual abuse.
Defense counsel argued that the expert testimony was unreliable because the field (child sexual abuse) had not been adequately developed to permit a witness to assert a reasonable opinion; that the expert's conclusions lent credibility to the child's testimony, *1084 as they were based on the expert's opinion that the child was telling the truth; and that the subject of the expert testimony required no expertise not already available to a jury drawing upon its life experiences and common sense.
The court denied the motion, ruling that the study of child sexual abuse was sufficiently established to permit an expert to state an opinion as to whether the patient's symptoms were consistent with child sexual abuse. The court determined that the testimony would be helpful to the jury but prohibited the witness from commenting on the truthfulness of the child.
Under the facts presented, we find no abuse of discretion in the trial court's ruling that child abuse syndrome is an area sufficiently developed to permit an expert to testify that the symptoms observed in the evaluated child are consistent with those displayed by victims of child abuse. The trial judge has broad discretion in determining the range of subjects on which an expert may testify. Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1981). Of critical importance in this determination, as pointed out in Johnson, is that the subject matter of the expert opinion be beyond the understanding of the average layman.[5] In the instant case, the trial court concluded that, even though child abuse is gaining publicity, it is not so understandable that people know as much about it as a qualified expert with the requisite skill and exposure to numerous studies in the field.
In Hawthorne v. State, 408 So.2d 801, 805 (Fla. 1st DCA 1982), review denied, 415 So.2d 1361 (Fla. 1982), involving the battered wife syndrome, this court stated:
The courts that have considered the admissibility of this type of expert testimony have generally analyzed it to see whether it meets three basic criteria: (1) the expert is qualified to give an opinion on the subject matter; (2) the state of the art or scientific knowledge permits a reasonable opinion to be given by the expert; and (3) the subject matter of the expert opinion is so related to some science, profession, business, or occupation as to be beyond the understanding of the average layman....
In Kruse v. State, 483 So.2d 1383, 1384-85 (Fla. 4th DCA 1986), the court held expert testimony on posttraumatic stress syndrome admissible in a child sexual assault case when proven relevant under Section 90.403, Florida Statutes, and more probative than prejudicial. However, the Kruse court made clear that it was not receding from the position that expert testimony may not be offered to directly vouch for the credibility of a witness.
Traditionally, a physician's opinion is predicated on a history and complaints obtained from the patient. In relating an opinion to this information, the physician necessarily bolsters the patient's credibility to some extent. In the instant case, the trial court expressly prohibited the expert from testifying directly on the credibility of the patient. Any inherent "bolstering" was a necessary incident of the expert testimony and permissible, as it was subject to the jury's scrutiny.
In the instant case, the court found the expert qualified to render an opinion that the child she examined displayed symptoms which were consistent with those displayed by children who have been sexually abused.[6] The trial court took into consideration evidence that the expert had conducted controlled group testing, had reviewed numerous studies, and had the requisite skill and exposure to the field to render a reliable opinion. The court also considered *1085 the symptoms the expert found displayed by the child she evaluated. The court found the area of child sexual abuse reasonably developed to the extent that an expert with requisite skill and knowledge of the area could render a narrowly tailored opinion based on her evaluation and knowledge of the subject matter.[7] Accordingly, under the facts of the instant case, the trial court did not err in finding the expert opinion to be reliable and relevant.
WENTWORTH, J., concurs.
ZEHMER, J., specially concurs with written opinion.
ZEHMER, Judge (specially concurring).
Although I concur in the affirmance of the conviction, I do so with some reservation and apprehension that this decision not be taken as cart blanche to use expert testimony by psychologists to corroborate the veracity of the witness accusing the criminal defendant in child sex abuse cases. As the majority opinion clearly explains, the psychologist in this case, Dr. Goslin, testified that her expert opinion was based partially on her belief that the child was telling the truth and that without such belief she would not be able to identify the source of the child's trauma as sexual abuse. While at first blush such expert testimony would appear to be nothing more than vouching for the veracity of the young victim, closer analysis shows that the expert witness in this case was careful to stay within the bounds of her expertise, even in the face of improper questions from the prosecuting attorney. On balance I conclude that the trial court did not abuse its discretion in admitting such testimony because its probative value could be said to outweigh any prejudice to the defendant, even though this record contains sufficient evidence to support the jury's finding of guilt on the part of the defendant without the testimony of Dr. Goslin.
The record does not reflect that defense counsel made appropriate objections to Dr. Goslin's testimony sufficient to preserve any material error for appellate review. In any event, Dr. Goslin was shown to be qualified to render an opinion regarding symptoms characteristically exhibited by children having been victimized by acts of sexual battery or abuse.
The history and complaints received and relied on by Dr. Goslin as the basis for her opinion expressed to the jury during trial were not described in full by her to the jury.[1] Instead, such history was first presented to the jury in detail by the young child's mother and grandmother, both of whom had personal knowledge of the child's initial complaints. No inconsistency between the history relied on by Dr. Goslin and that testified to by the mother and grandmother appeared during trial. Thus, the manner in which Dr. Goslin's testimony was presented to the jury did not create *1086 any opportunity for the jury to infer that this witness was vouching for the credibility of the child's statements concerning the defendant's conduct.
One blatant error deserves mention, however, even though appellate counsel did not argue it, and properly so, as error on this appeal. The prosecuting attorney asked Dr. Goslin, a psychologist, to express her opinion based on "reasonable medical certainty." A psychologist is not competent to render a professional opinion based on that standard unless she also is shown to be a medical doctor or psychiatrist with competence in those disciplines as well. Although Dr. Goslin explained on cross-examination that she was not a medical doctor, thus confirming that the prosecutor's question "based on reasonable medical certainty" was clear error, defense counsel made no objection to question nor moved to strike the answer. Fortunately, the answer given by Dr. Goslin was actually couched in terms of her expertise as a clinical psychologist rather than in terms of reasonable medical certainty. It is apparent that this expert witness appreciated, perhaps much more than the attorneys trying the case, the practical as well as legal limitations on her ability to express an opinion based on her expertise as a psychologist. Despite the prosecuting attorney's question being framed in terms of reasonable medical certainty, Dr. Goslin only opined that the complaints and symptoms related to her and observed by her were consistent with the symptoms typically seen in children who had been sexually abused. Her opinion was based on studies of known sexually abused children and observed characteristic patterns or combinations of certain symptoms. While concluding that the pattern of symptoms in this case strongly suggested sexual abuse, Dr. Goslin stated that such symptoms might also be seen in children suffering from other types of traumatic experiences given evidence of such other cause or experience; however, the record contained no evidence of such other causes in the case of this young victim. Thus, despite the incorrect form of the prosecutor's question, the expert testified within the permissible bounds of her competence.
The majority opinion states, "Traditionally, a physician's opinion is predicated on a history and complaints obtained from the patient," and indicates that to this extent such testimony by the physician may bolster the credibility of the patient's testimony regarding the cause of the medical complaints. It is this facet of a psychologist's testimony in these cases that causes my grave concern. Psychologists and psychiatrists are permitted to testify to the substance of their verbal examination of the patient and the complaints verbalized by the patient because such verbal responses constitute the only way in which they can conduct a meaningful examination. Morella v. Brown, 425 So.2d 123 (Fla. 3d DCA 1982), review denied, 434 So.2d 886 (Fla. 1983); Quinn v. Millard, 358 So.2d 1378 (Fla. 3d DCA 1978); Steiger v. Massachusetts Casualty Ins. Co., 253 So.2d 882 (Fla. 3d DCA 1971).[2] The fact that the psychologist in this case relied on information obtained in part from the victim and her mother may well affect the weight to be given to her testimony, but that fact is not a ground for its exclusion. Steiger v. Massachusetts Casualty Ins. Co., 253 So.2d 882. Dr. Goslin did not testify in a manner directly supporting the credibility of the history of cause she obtained; rather, she relied on the history as given by others who had testified in court. Consequently, the persuasiveness of her opinion testimony obviously rose or fell on the credibility the jury ultimately gave to the testimony of such other witnesses.
The use of expert opinion testimony of the nature presented in this case must be carefully controlled to prevent its misuse by the prosecution, thus becoming the main feature of the trial, and eventually its misinterpretation by the jury during deliberations. *1087 Such opinion testimony is competent to prove only that the victim is exhibiting or suffering from symptoms that have been found by experts in the field of psychology to be consistent with the child having undergone an experience of sexual battery or abuse. As such, the expert opinion constitutes circumstantial evidence from which it may be inferred that the child has suffered episodes of abuse at the hands of someone at some time. Such testimony, however, may not be received as corroborating evidence that the defendant committed the criminal act charged on the specified occasion. Where such expert opinion exceeds proper legal bounds, such misuse of expert testimony may necessarily lead to reversal of a conviction. See State v. Black, 109 Wash.2d 336, 745 P.2d 12 (1987).
It must be remembered that the critical issue in this and similar criminal prosecutions is not the psychological reaction of the child to the crime, but whether the specific act charged was committed by the defendant at the time and place alleged. The victim's psychological reaction to the criminal assault is only relevant to prove that she has in fact undergone a sexual assault or battery, much the same as the results of a physician's examination with the so-called "rape kit" is admissible to prove that the victim had in fact been subjected to sexual intercourse. But because the results of psychological examinations must necessarily rest upon explicit history of a specified incident or incidents suffered by the victim, unlike the physical examination results with the rape kit, such expert testimony must always be carefully controlled by the trial court to prevent its misinterpretation by the jury. In some circumstances, the trial judge should even consider giving an appropriate special instruction to the jury concerning the limited probative value of such testimony to prevent undue prejudice to the defendant.
With this additional explanation and caution, I concur in the affirmance of the appellant's conviction.
NOTES
[1] By order of the trial court, the motion was not heard until the State attempted to tender the expert testimony at trial. The parties agreed not to mention the expert witness or her possible testimony in their opening statements.
[2] The test administered was the Stanford Binet Intelligence Test.
[3] The personality test administered, the Roberts Apperception Test, involved showing the child pictures and asking her to make up a story to go along with the pictures, and also asking the child questions while she draws her own pictures.
[4] The three types of symptoms were referred to as: sexual behavior (suggestions of sexual activities, e.g., sexual play with toys); behavioral reactions (extreme passiveness or aggressiveness, changes in eating, underachievement); and emotional reactions (sleep disturbances, physical and depressive reactions).
[5] Section 90.702, Florida Statutes, provides:

Testimony by experts.  If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
[6] The expert did not render the opinion that the child had been "sexually abused," as was the case in Youngblood v. State, 492 So.2d 793, 794 (Fla. 1st DCA 1986). While we concur with the holding in Youngblood, we also find it factually distinguishable and inapplicable to the instant case.
[7] The trial court ruled in part as follows:

THE COURT: All right, it seems to me there are two components, Mr. Murrell, of your objection: (1) that this field or area of science is not sufficiently developed to permit a witness to assert a reasonable opinion; and (2) that portions of it are so commonplace that the jury doesn't really need the expert opinion; they can make that decision themselves.
MR. MURRELL: Yes, sir.
THE COURT: As to that, I would overrule the objection as to that and I would deny the motion properly as to that. I think that while the area of child abuse is now gaining much publicity in our society, I don't think that it is so understandable and that people know so much about it that an expert would not be helpful to the jury. And I do find that this type of testimony would be helpful to the jury.
....
... I'm not going to permit Dr. Goslin to testify as to that she believes that Shona is telling the truth. I think it's very clear that that is inadmissible and improper testimony, regardless of the facts. One witness cannot comment on the truthfulness of testimony of another witness.
[1] The record at page 359 reflects the following questions by the prosecuting attorney and Dr. Goslin's answers:

Q Without going into what she precisely told you, did she tell you [sic] an event that happened that was traumatic for her?
A She alluded to it, yes.
Q Did you find that that rendition that [she] gave you, was that consistent with other reports that you had of what happened?
A It was.
Q Was that consistent with police reports you read?
A Yes, it was.
[2] Since the cited cases recognize that psychiatrists and psychologists enjoy a limited exception to the general rule limiting testimony of medical history to treating as distinguished from examining physicians, we need not be concerned with the application of that rule in this case or whether the rule survives the enactment of the Florida evidence code. See, e.g., Morella v. Brown, 425 So.2d at 124 n. 2; Bartholf v. Westside Automotive, Inc., 410 So.2d 956 (Fla. 1st DCA 1982); Marshall v. Papineau, 132 So.2d 786 (Fla. 1st DCA 1961).