536 So.2d 212 (1988)
David Edward GLENDENING, Petitioner,
v.
STATE of Florida, Respondent.
No. 70346.
Supreme Court of Florida.
December 1, 1988.
Rehearing Denied February 3, 1989.
*214 Stuart C. Markman of Winkles, Trombley, Kynes & Markman, P.A., Tampa, and Ronald K. Cacciatore, P.A., Tampa, for petitioner.
Robert A. Butterworth, Atty. Gen., and Katherine V. Blanco and Kim W. Munch, Asst. Attys. Gen., Tampa, for respondent.
EHRLICH, Chief Justice.
We have for review Glendening v. State, 503 So.2d 335 (Fla.2d DCA 1987), in which the district court expressly declared valid section 90.803(23), Florida Statutes (1985). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
On July 26, 1985, Glendening was charged by information with sexual battery upon a child eleven years of age or younger, in violation of section 794.011(2), Florida Statutes (1985). The acts upon which the charge was based were alleged to have occurred between September 1, 1984 and June 24, 1985. The alleged victim was Glendening's three-and-one-half-year-old daughter.
Glendening was found guilty of the charged offense and received a life sentence with a mandatory minimum twenty-five years of incarceration. On appeal, the Second District Court of Appeal affirmed Glendening's conviction and sentence, rejecting the arguments that the trial court erred in admitting out-of-court statements made by the young victim under section 90.803(23), Florida Statutes (1985).
Glendening now seeks review of the decision of the Second District Court of Appeal. As the district court below noted, the major thrust of Glendening's argument involves the constitutionality of section 90.803(23), its applicability to his case, and compliance with the section's requirements. Section 90.803(23) is a hearsay exception which permits, under certain circumstances, the introduction of out-of-court statements made by a child victim of sexual abuse describing any act of child abuse, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, if the child has a physical, mental, emotional, or developmental age of eleven or less.
We first reject Glendening's contention that section 90.803(23) is unconstitutional on its face. Glendening relies upon the arguments set forth in the brief of Petitioner Perez filed in the case of Perez v. State, Case No. 70,027 in regard to this issue. We rejected these arguments in our decision in Perez v. State, 536 So.2d 206 (Fla. 1988), released simultaneously with the present decision.
We next address Glendening's argument that because he was charged with an offense occurring before the effective date of section 90.803(23), application of the new hearsay exception to his case violated the prohibition against ex post facto laws. The United States Supreme Court has stated that there has been no attempt to precisely delimit the scope of the phrase "ex post facto law." One statement of the characteristics of an ex post facto law set forth by the Supreme Court, however, provided that "`any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.'" Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977) (quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)). Another formulation, reiterated recently in Miller v. Florida, also provides that "`[e]very law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender'" violates the prohibition against ex post facto laws. 482 U.S. 423, 107 S.Ct. 2446, *215 2450, 96 L.Ed.2d 351 (1987) (quoting Calder v. Bull, 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798)). No ex post facto violation occurs if a change is merely procedural and does not alter "substantial personal rights." Miller, 107 S.Ct. at 2451; Dobbert, 432 U.S. at 293, 97 S.Ct. at 2298.
Relying primarily upon that portion of the formulation of the scope of ex post facto laws from Miller which is set forth above, Glendening contends that section 90.803(23) alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense. He further contends that because he was disadvantaged by the retrospective application of the exception, admission of the out-of-court statements of the child victim pursuant to section 90.803(23) in his case violated the prohibition against ex post facto laws. We disagree.
The proscription against laws which affect the legal rules of evidence and receive less, or different, testimony in order to convict the offender has been construed as prohibiting those laws which "`change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" Miller, 107 S.Ct. at 2453 (quoting Hopt v. Utah, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)). Changes in the admission of evidence have been held to be procedural. Two examples of this, noted in Dobbert, are found in Hopt and Thompson v. Missouri, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898). In Hopt, the law in effect on the date of the alleged homicide provided that a convicted felon could not be called as a witness. Prior to trial of the case, the law was changed and a convicted felon, called to the stand to testify, implicated Hopt in the crime. The Supreme Court rejected the argument that the law was ex post facto, stating that "[a]ny statutory alteration of the legal rules of evidence which... only removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only" and "are not ex post facto in their application to prosecution for crimes committed prior to their passage." 110 U.S. at 589, 590, 4 S.Ct. at 209-10. In Thompson, the Missouri Supreme Court reversed Thompson's conviction of murder because of the inadmissibility of certain evidence. Letters written by the defendant to his wife were submitted for handwriting comparison, which was prohibited by the rules of evidence. Prior to the second trial, the law was changed to make this objectionable evidence admissible and Thompson was again convicted. The United States Supreme Court rejected the argument that this change was violative of the ex post facto clause and held that the change was procedural. See Dobbert, 432 U.S. at 293, 97 S.Ct. at 2298.
The same reasoning which resulted in the Supreme Court's determination that the statutes in Hopt and Thompson were procedural leads to the conclusion that section 90.803(23), Florida Statutes, is also procedural and that the statute does not affect "substantial personal rights." As in Hopt, "[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by" the enactment of section 90.803(23). 110 U.S. at 589-90, 4 S.Ct. at 209-10. As in Thompson, section 90.803(23) "left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the state ... must overcome the presumption of his innocence, and establish his guilt beyond a reasonable doubt." 171 U.S. at 387, 18 S.Ct. at 924. Accordingly, we conclude that the district court below correctly held that application of section 90.803(23) in the present case does not violate the prohibition against ex post facto laws.
The third issue addressed concerns compliance with the requirements of section 90.803(23) in the trial court below. Prior to trial, the state served a motion to videotape the child's testimony for introduction at trial pursuant to section 92.53, Florida Statutes (1985). Section 92.53 provides that upon

*216 a finding that there is a substantial likelihood that a victim or witness [in a sexual abuse or child abuse case] who is under the age of 16 would suffer at least moderate emotional or mental harm if he were required to testify in open court or that such victim or witness is otherwise unavailable as defined in s. 90.804(1), the trial court may order the videotaping of the testimony of the victim or witness in a sexual abuse case or child abuse case, whether civil or criminal in nature, which videotaped testimony is to be utilized at trial in lieu of trial testimony in open court.
The trial court heard evidence on the motion and found that there was a substantial likelihood that the child would suffer at least moderate emotional or mental harm if she were required to testify in open court. The trial court accordingly entered an order permitting the videotaping and required Glendening to view the testimony outside the child's presence.
At the videotaping session, the trial court first conducted a voir dire examination of the child to determine her competency to testify. The trial court concluded that the child was competent to testify because she showed an above average intelligence for a three-and-one-half-year-old child and was aware of her surroundings, attributing her inability to explain the difference between the truth and a lie to the inartful questioning by the court and the state attorney. Thereafter, when the child was interrogated concerning the matters involved in the case, she did not implicate her father in any misconduct.
Glendening made a pretrial motion to exclude all hearsay statements made by the child. In response, the state filed a notice of the various hearsay statements it intended to introduce. The trial court ruled that the state's response did not constitute adequate compliance with the notice requirements of section 90.803(23)(b) and permitted the state to file a more detailed response. Thereafter, but more than ten days before trial, the state filed a detailed recitation of the hearsay statements to be offered at trial. At a subsequent hearing on the motion, the trial court observed that it could not rule upon the admissibility of the hearsay statements without hearing the witnesses' testimony concerning the circumstances under which the child's statements were made.
At trial, the witnesses listed on the state's notice testified concerning the out-of-court statements made by the child and the circumstances under which the statements were made. The videotape of the child's testimony was shown to the jury once during the state's case-in-chief and then again by the defense.
Glendening raises several arguments in regard to the compliance with section 90.803(23) by the trial court. Glendening contends that the requirements of section 90.803(23)(a)(2) were not met. This subsection provides that in order to admit the hearsay statements of a child under this exception, the child must either (a) testify, or (b) be unavailable. If the child is unavailable, the statute also requires other corroborative evidence of the abuse or offense. Glendening argues the district court below erred in holding that introduction of the videotaped testimony of the child, taken pursuant to section 92.53, was sufficient to satisfy the requirement that the child testify in order to admit the child's hearsay statements. We reject this argument.
Section 92.53(1) provides that when the requisites of the statute are met, the trial court may order "the videotaping of the testimony of the victim or witness ... which videotaped testimony is to be utilized at trial in lieu of trial testimony in open court." (Emphasis added.) The statute clearly provides that videotaped testimony is the equivalent of testimony in open court. Moreover, the legislative intent in enacting section 92.53 was to spare children, to the extent constitutionally permissible, the trauma of testifying in open court.[1] The legislative intent would be defeated *217 if section 92.53 did not have the effect of allowing the videotaped testimony of children meeting the requirements of the statute where the laws of the state refer to "testimony" or "testifying."
Application of section 92.53 to permit videotaping the child's testimony instead of requiring the child to testify in open court for purposes of admitting the child's out-of-court statements pursuant to section 90.803(23) does not violate the federal or Florida constitutional guarantee of the right of confrontation.[2] The defendant is permitted full cross-examination of the child, which is the functional purpose of the confrontation clause. Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987). The jury is still able to see the witness as the testimony is given and "judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). The fact that Glendening was required to view the child's testimony from behind a two-way mirror as it was videotaped does not change the conclusion.[3] In the present case, Glendening was accompanied by counsel behind the two-way mirror and was able to communicate with counsel questioning the child if the need arose. His opportunity to engage in full and effective cross-examination was not interfered with by his exclusion. See, e.g., Stincer, 107 S.Ct. at 2663-64 n. 9.
Furthermore, although the confrontation clause does reflect a preference for face-to-face confrontation at trial, Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980), the Supreme Court has recognized that
competing interests, if "closely examined," Chambers v. Mississippi, 410 U.S. 284, at 295, 93 S.Ct., [1038,] at 1045, [35 L.Ed.2d 297] may warrant dispensing with confrontation at trial. See Mattox v. United States, 156 U.S. 237, at 243, 15 S.Ct. [337,] at 340 [, 39 L.Ed. 409] ("general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case"). Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings.
Id. at 64, 100 S.Ct. at 2538. We agree with the First District Court of Appeal that "[w]eighing the competing interests in the balance ... the defendant's right to confront his accusers must give way to the State's interest in sparing child victims of sexual crimes the further trauma of in-court testimony." Chambers v. State, 504 So.2d 476, 477-78 (Fla. 1st DCA 1987). Our conclusion is not altered by the recent United States Supreme Court decision in Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), which was issued subsequent to oral argument in the present case. Coy was charged with sexually assaulting two thirteen-year-old girls while they were camping out in the backyard of the house next door to him. Neither of the girls was able to describe their assailant's face. At trial, the girls were permitted to testify behind a large screen which enabled Coy to dimly perceive the witnesses but because of which the witnesses were completely unable to see Coy. See Iowa Code § 910A.14 (1987). The United States Supreme Court found that Coy's constitutional right to face-to-face confrontation was violated and reversed the judgment of the Iowa Supreme Court which had affirmed his convictions and sentences.
There are two reasons why the decision in Coy does not alter our conclusion. First, the present case is distinguishable from the *218 scenario in Coy. In Coy, the Supreme Court recognized that "[i]t is true that we have in the past indicated that rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests." 108 S.Ct. at 2802. The majority opinion notes that any such exception to the right of face-to-face confrontation will only be allowed when necessary to further an important public policy. The majority then concludes that whatever exceptions may exist, the exception set forth in the Iowa statute could not be sustained by any conceivable exception. Iowa's argument that a necessity for an exception was established by the statute, which creates a legislatively imposed presumption of trauma, was rejected because the exception was not a firmly rooted exception and "there have been no individualized findings that these particular witnesses needed special protection." Id. at 2803.
In contrast to the statute at issue in Coy, section 92.53 requires an individual determination for each child witness that the use of videotaped testimony is necessary to prevent the child from suffering emotional or mental harm. In the present case, the trial court conducted a hearing on the issue of whether the child victim would suffer at least moderate emotional or mental harm if required to testify in open court. The child's mother and the child's guardian ad litem testified that the child had expressed a fear of seeing her father and described behavior of the child on various occasions to support their conclusions. In addition, Dr. Meyer, a pediatrician who had attempted to examine the child, and Ms. Shapiro, a social worker who works with sexually abused children, testified that based upon their experience with this particular child testifying in open court would be a terrifying experience, particularly if she were to be cross-examined with her father in the room. Both Dr. Meyer and Ms. Shapiro felt that examining the child by way of videotaping where she was not able to see her father would minimize her emotional trauma. Based upon this testimony, the trial judge concluded that there was a substantial likelihood that the victim would suffer at least moderate emotional or mental harm if required to testify in open court in the presence of the defendant. Thus, contrary to the facts in Coy, the present case involved "a case-specific finding of necessity." Coy, 108 S.Ct. at 2805 (O'Connor, J., concurring). Moreover, as noted previously, the protection of child witnesses from the trauma of testifying in open court in the presence of the defendant, when it is demonstrated that there is a substantial likelihood that such trauma would result, is a public policy of such importance as to justify a trial procedure that calls for something other than face-to-face confrontation. See id.
Second, Justice Scalia recognized in the majority opinion in Coy that the United States Supreme Court has "recognized that other types of violations of the Confrontation Clause are subject to that harmless error analysis ... and [has] see[n] no reason why denial of face-to-face confrontation should not be treated the same."[4] 108 S.Ct. at 2803. We conclude that if the denial of face-to-face confrontation in the present case had been error, any error would have been harmless. When questioned, the child not only did not implicate the defendant in any wrongdoing, but specifically stated that he had not hurt her. Following this testimony by the child during examination by the state, defense counsel declined to conduct cross-examination of the child. Moreover, this exculpatory tape was presented to the jury by the defense during its case. Because the videotaped testimony was totally exculpatory, the admission of the testimony unquestionably did not contribute to the conviction and was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986).
*219 Accordingly, we conclude the district court below correctly held that introduction of the child's videotaped testimony, taken pursuant to section 92.53, satisfied the requirement of section 90.803(23)(a)(2) that the child either testify or be unavailable. Accord State v. Sheppard, 197 N.J. Super. 411, 484 A.2d 1330 (Law Div. 1984) (Child victim would be permitted to testify through use of video equipment in prosecution of child's stepfather for sexual assault, despite resulting lack of eye contact between child witness and defendant where defendant, judge, jury, and spectators would see and hear the child clearly, adequate opportunity for cross-examination would be provided, and in view of trial court's finding of harm to the child if she was required to testify in open court.).
Even if we had agreed with Glendening's argument that if the child testifies via videotape rather than in open court, the child's out-of-court statements could not be admitted without first imposing the additional safeguards under the Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), unavailable declarant scenario, it would be of no consequence in our review of the present case. The Roberts unavailable declarant scenario requires that if the declarant is unavailable, the hearsay must be marked with particularized guarantees of trustworthiness in order to be admissible. Id. at 65, 100 S.Ct. at 2538. Section 90.803(23) incorporates this requirement by requiring that there be other corroborative evidence of the abuse or offense if the child declarant is unavailable. We held in Perez that this requirement satisfied the Roberts standard for admission of hearsay statements by unavailable declarants. Perez v. State, 536 So.2d 206 (Fla. 1988). In the present case, the abuse was corroborated by medical testimony and by two witnesses who testified that Glendening admitted to them that he committed the offenses.[5]
We also reject Glendening's argument that the trial court erred in determining that the child was competent to testify. We have been referred by Glendening to portions of the transcript of the competency hearing which focus on the child's weakness as a witness. Other portions, however, tend to support the child's competency to testify. As this Court has previously held, it is "within the sound discretion of the trial judge to decide whether an infant of tender years has sufficient mental capacity and sense of moral obligation to be competent as a witness, and his ruling will not be disturbed unless a manifest abuse of discretion is shown." Rutledge v. State, 374 So.2d 975, 979 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). Our examination of the record reveals no abuse of discretion on the part of the trial judge in permitting the child's testimony.[6]
The final issue involves the alleged improper admission of expert witness testimony. Rebecca Winkel, a coordinator for the *220 child protection team, was recognized by the trial court as an expert in the area of interviewing children regarding the subject of child abuse. During direct examination, the prosecutor asked: "Mrs. Winkel, based upon your interview with Jennifer did you reach any opinion within a reasonable degree of professional certainty as to whether or not she had been sexually abused?" Defense counsel objected to the question on the basis that the question called for an opinion on the ultimate issue in the case and on the basis that the witness was not competent to make the conclusion. The objection to the question was overruled, with the understanding that the question was limited to the specific act alleged, anal penetration, and limited to the doll interview. The question was rephrased as follows: "Based upon your interview with Jennifer, her marking the charts, have you reached any opinion within a reasonable degree of professional certainty as to whether or not Jennifer Glendening's anus was penetrated by a penis?" In response to the question, Mrs. Winkel stated that she had. When questioned what that opinion was, Mrs. Winkel stated that it was her opinion "that Jennifer has been sexually abused by her father." Glendening contends he was prejudiced by the improper admission of this expert opinion.
The trial court correctly overruled the defense objection to the question. Rebecca Winkel was recognized, without objection by the defense, as an expert in conducting interviews with children regarding suspected sexual abuse. A trial court has broad discretion in determining the range of subjects on which an expert witness may be allowed to testify and unless there is a clear showing of error, its decision will not be disturbed on appeal. Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). The trial court did not abuse its discretion in determining that an opinion as to whether the child was sexually abused was within the province of the expert witness.
A qualified expert may express an opinion as to whether a child has been the victim of sexual abuse. Sections 90.702 and 90.703, Florida Statutes (1985), deal with admissibility of expert testimony and opinions.
90.702 Testimony by experts.  If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
90.703 Opinion on ultimate issue.  Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
These two sections are subject, however, to the limitations of section 90.403, Florida Statutes (1985), which provides in relevant part:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
Accordingly, the evidence code sets forth four requirements to be met in order to admit an expert opinion: (1) the opinion evidence must help the trier of fact; (2) the witness must be qualified as an expert; (3) the opinion must be capable of being applied to evidence at trial; and (4) the probative value of the opinion must not be substantially outweighed by the danger of unfair prejudice. See Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986).
Testimony in the form of an opinion by Mrs. Winkel would be helpful to the jury in view of the age of the victim. The child's age made it likely that her inexperience in sexual matters would make it difficult for her to describe what happened. The opinion of a witness such as Mrs. Winkel, recognized as an expert in interviewing suspected young victims of sexual abuse, provided the jury more information from which to decide whether the child had actually been a victim of sexual abuse. Mrs. *221 Winkel's opinion testimony could be applied by the jury to the medical evidence to connect the findings of the medical examination to the cause. The probative value of the opinion that the child was sexually abused was not substantially outweighed by any unfair prejudice. The jury was able to hear a tape recording of the interview which formed the basis of Mrs. Winkel's opinion and heard defense arguments challenging the interview technique. The jury was properly left free to determine whether to accept the opinion and if so, what weight it should be given. See Kruse. See also Bloodworth v. State, 504 So.2d 495, 497 (Fla. 1st DCA 1987) (trial court did not err in allowing expert to express opinion that the victim had engaged in recent nonconsensual intercourse).
We agree with Glendening that it was improper for the expert witness to testify that it was her opinion that the child's father was the person who committed the sexual offense. An opinion as to the guilt or innocence of an accused is not admissible. See Lambrix v. State, 494 So.2d 1143 (Fla. 1986); Spradley v. State, 442 So.2d 1039 (Fla. 2d DCA 1983). Although section 90.703 would appear to permit such an opinion, such testimony is precluded on the basis of section 90.403. Any probative value such an opinion may possess is clearly outweighed by the danger of unfair prejudice. This error does not, however, require reversal. Except in cases of fundamental error, an issue will not be considered for the first time on appeal. Steinhorst v. State, 412 So.2d 332 (Fla. 1982). Defense counsel neither objected to the answer nor moved to strike it and the error is not of a fundamental nature. Accordingly, the issue is not properly preserved for appeal because the question was proper and the improper reply was not contemplated by the question and was not the subject of a motion to strike.
Glendening also argues that Dr. Kent, a psychologist, was improperly allowed to vouch for the credibility of a witness by stating that in his expert opinion the child's allegation, as conveyed by Mrs. Winkel, was based upon independent recall rather than improper prompting. Defense counsel's objection, however, was on the basis that the question was irrelevant, not that the question called for improper vouching for the credibility of the hearsay declarant. In order for an argument to be cognizable on appeal, it must be the specific contention asserted as the legal ground for the objection below. Steinhorst. Accordingly, this issue is also not properly preserved for appeal.
In summary, we conclude the district court below correctly held that section 90.803(23) is constitutional and was properly applied in the present case. Accordingly, we approve the decision of the district court below.
It is so ordered.
McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
OVERTON, J., concurs in result only.
GRIMES, J., did not participate in this case.
NOTES
[1] See ch. 85-53, Laws of Fla.: "WHEREAS, it is necessary that safeguards be instituted for the children of the State of Florida who are victimized to assure that their right to be free from emotional harm and trauma occasioned by judicial proceedings is protected by the court... ."
[2] U.S. Const. amend. VI; art. 1, § 16, Fla. Const.
[3] Section 92.53(4) provides that

[t]he court may require the defendant to view the testimony from outside the presence of the child by means of a two-way mirror or another similar method that will ensure that the defendant can observe and hear the testimony of the child in person, but that the child cannot hear or see the defendant. The defendant and the attorney for the defendant may communicate by any appropriate private method.
[4] Justice Scalia went on to note that "[a]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988).
[5] Glendening's argument that permitting videotaped testimony to be the equivalent of in-court testimony will make it easier for the state to introduce hearsay and decrease the likelihood that children will be produced for in-court testimony is without merit. The argument ignores the fact that by meeting the lower standard of demonstrating that testimony in open court will cause moderate emotional harm so that the child's testimony may be videotaped, the state is subjecting the child to cross-examination by the defense. In contrast, if the state meets the heavier burden of establishing that testimony will cause the child to suffer severe emotional harm, the defense may have no opportunity to cross-examine the child. In addition, the argument assumes that the trial court will always find that the child will suffer emotional harm if required to testify in open court. We decline to engage in such speculation.
[6] Furthermore, Glendening's argument that the child must be testimonially competent in order for the child's out-of-court statements to be admitted has been rejected by this Court in Perez v. State, 536 So.2d 206 (Fla. 1988). In Perez, we held that the requirement of section 90.803(23) "that the trial court find that the time, content, and circumstances of the statement provide sufficient safeguards of reliability furnishes a sufficient guarantee of trustworthiness of the hearsay statement" to satisfy the requirements of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). At 211. In the present case, when an objection to the admission of a hearsay statement was made, the trial court properly made findings, outside the presence of the jury, that the out-of-court statements were reliable.