564 So.2d 500 (1990)
Gerald "Bud" PAGE, Appellant,
v.
Nicole M. ZORDAN, a Minor, by and through Her Parents and Natural Guardians, Richard B. ZORDAN and Charmain M. Zordan; and Richard B. Zordan and Charmain M. Zordan, Individually, Appellees.
No. 88-01571.
District Court of Appeal of Florida, Second District.
May 11, 1990.
Rehearing Denied August 1, 1990.
Claude H. Tison, Jr., and Ted R. Manry, III, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Roy L. Glass, St. Petersburg, for appellees.
PER CURIAM.
The appellant (Page) was the defendant in this action for damages brought by Nicole M. Zordan, a minor, through her parents on her behalf and by her parents, individually, on their own behalf. Several theories of recovery were pleaded, but the essence of all theories was the allegation *501 that Page, who at the time was married to Nicole's maternal grandmother, had on various occasions between 1977 (when Nicole was approximately seven years of age) and 1982 (when Nicole was approximately twelve) handled, fondled, and touched Nicole in a lewd, lascivious or indecent manner. The complaint, which was filed when Nicole was fourteen years of age, sought compensatory and punitive damages on behalf of both Nicole and her parents. Nicole was seventeen years of age when the case was tried before a jury. Based on the verdict in favor of the appellees returned by the jury, the trial court entered a final judgment against Page in the total amount of $53,000, consisting of $13,000 in compensatory damages plus $40,000 in punitive damages, together with costs in the amount of $22,507.35.
Page appeals from the final judgment, claiming that there were several evidentiary rulings by the trial court which were erroneous. We agree with Page on all issues which he raises on this appeal. We conclude that the trial was unfair to Page, and we reverse and remand for a new trial.
Page's first issue requires application of the rulings of the Florida Supreme Court in Tingle v. State, 536 So.2d 202 (Fla. 1988), and in Glendening v. State, 536 So.2d 212 (Fla. 1988). In Tingle the court held that an expert witness may not "directly" testify as to the truthfulness of the victim. The court went on to adopt the position taken by the Eighth Circuit Court of Appeals in United States v. Azure, 801 F.2d 336 (8th Cir.1986). It quoted with approval the language of the Azure court that, in cases involving child sexual abuse, some expert testimony may be helpful, but putting an impressively qualified expert's stamp of truthfulness on a witness's story goes too far. The court emphasized that the role of the expert witness is only to aid a jury in assessing the veracity of a victim of child sexual abuse, and not to usurp that function of the jury.
Glendening treats another aspect of expert witness testimony in a child sexual abuse case. There the court held that it is improper for an expert witness to testify that in his or her opinion the accused person is, in fact, the person who committed the sexual offense.
In the instant case, the appellees presented the testimony of five expert witnesses before Nicole herself took the stand. Reviewing the testimony of these experts, we are persuaded that Page is correct in arguing that the purpose of this testimony was to put before the jury expert opinion as to the credibility of Nicole and the culpability of Page. For example, Dr. Merin was questioned concerning character traits indicative of a person's being a child sexual molester. Dr. Merin testified that there were no such identifiable traits, but he went on to testify that the possession of pornographic magazines would be a "significant consideration." He then described possession of pornographic magazines as a "red flag" in the case of a man in his fifties or sixties as distinguished from a young man. Dr. Merin testified that Page related to him an accusation by Nicole's mother, Charmain, that when Charmain was about fourteen years old, Page had peeped into her bedroom. The appellees submitted other testimony to show that Page did possess pornographic magazines in 1979 and that Page suffered from a sexual dysfunction. Page argues that the trial court erred in admitting evidence that Page possessed pornographic magazines in 1979, had allegedly peeped into Charmain Jordan's bedroom twenty years ago, and suffered from a sexual dysfunction. We agree that in this case such evidence was inadmissible as entirely irrelevant to the issues and that such evidence was highly prejudicial to Page. Presenting that evidence through the testimony of an expert witness on behalf of the appellees was particularly unfair.
It is true that the appellees never asked any of their expert witnesses the direct question whether, in the opinion of the witness, Nicole was being truthful when she related to them her accounts of the alleged sexual abuse by Page, nor did they directly ask any of their expert witnesses whether they had an opinion as to *502 whether Page was guilty of the alleged acts of child molestation. But it is not necessary, under Tingle and Glendening, for questions to be asked so directly in order to run afoul of the Tingle and Glendening rules. This action essentially was a contest between the credibility of Nicole's story and the credibility of Page's denial. The appellees' expert witnesses impermissibly intruded into the function of the jury to determine such questions of credibility.
Page raises a further issue concerning the testimony of Dr. Gerard Boutin, a clinical psychologist, as to a "sexual abuse legitimacy scale" which he had used to evaluate the credibility of Nicole's report that she had been sexually molested. Dr. Boutin was allowed to testify that Nicole's score on this test was "strongly suggestive of bona fide sex abuse." Page argues that the trial court erred in allowing testimony concerning the "sexual abuse legitimacy scale," which had only been made available to the witness (unknown to Page) about three weeks before Dr. Boutin testified, where no predicate was established by the appellees concerning the acceptance of the test in the professional community. Page is quite correct on this point. In Fay v. Mincey, 454 So.2d 587 (Fla. 2d DCA 1984), this court held that the admissibility of evidence relating to a relatively new scientific-medical test, experiment, or procedure lies largely within the discretion of the trial court. This court further held that before any such new procedure and its results are admissible, a trial court must determine that the new test being presented has some reasonable degree of recognition and acceptability among the spectrum of scientific or medical experts who study, diagnose, test, and otherwise deal with the particular subject which is sought to be examined and diagnosed by the proffered test. The "sexual abuse legitimacy test scale" was not supported by any evidence concerning its recognition and acceptability within the scientific community. The trial court, therefore, erred in allowing Dr. Boutin to testify concerning this test. Contrary to the appellees' position, our review of the record convinces us that this point was preserved for appellate review.
Lastly, Page argues that the trial court erred in allowing a friend of Nicole's, Christie Helms, to testify that Nicole told Christie that Page had molested her. The admissibility of that clearly hearsay testimony was sought to be justified as within the provisions of section 90.801(2)(b), Florida Statutes (1987). We agree with Page that no foundation was laid for the admissibility of the hearsay testimony based on that statute.
For all of the foregoing reasons, we reverse and remand for a new trial.
DANAHY, A.C.J., and SCHOONOVER and PATTERSON, JJ., concur.