642 So.2d 78 (1994)
Edwin TORO, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1272.
District Court of Appeal of Florida, Fifth District.
September 2, 1994.
F. Wesley Blankner, Jr., of Jaeger & Blankner, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Steven J. Guardiano and Kimberly D. Nolen, Asst. Attys. Gen., Daytona Beach, for appellee.
GRIFFIN, Judge.
We find no error in any of the issues raised on appeal and affirm the conviction. Specifically, we note that the lower court did not err in overruling the objection made below that the testimony of the state's expert exceeded the scope of the proffer. We have carefully reviewed the record and find that the objection was properly overruled because it was factually inaccurate and would not, in any event, have controlled the issue of admissibility.
Although this case was tried in accordance with the law controlling at the time of trial, we nevertheless write to suggest that recent developments in the law of Florida may, in the future, warrant reexamination of the kind of expert testimony used in this case. In the present case, a psychologist was called to testify about her evaluation of the victim, who was allegedly subjected to repeated acts *79 of oral, anal and vaginal penetration by her stepfather from age eleven until age fifteen. At the time of trial, the victim was approximately eighteen years old. The victim had never been examined medically. The testimony of the state's expert psychologist was initially presented to the trial court by proffer. The psychologist testified that she interviewed the victim on four occasions. She also read the statement given to the police and the deposition taken by the alleged victim and her mother. The purpose of the interviews was to look for "symptom patterns." These symptoms consisted of a "sense of danger," sleep disturbance, decrease in occupational function (i.e. going to school), making poor choices about her friends, decreased interest in events or activities in general, irritability, anger, poor concentration, hypervigilence and exaggerated startle response (i.e. jumping when someone walked up behind her and touched her). The psychologist concluded the victim was suffering from "post-traumatic stress disorder." Neither during the proffer nor in her testimony at trial was any of this behavior connected to sexual abuse except for the psychologist's testimony that she believed that the source of the trauma that had resulted in post-traumatic stress syndrome was sexual abuse  because that is what the victim identified the trauma to be.
The admissibility of an expert's opinion that a child was the victim of sexual abuse was decided in Florida at a very early stage in the development of research and understanding of this issue. See John E.B. Meyers, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.Review 1, 74 (1989). It turns out that the position taken in Florida in favor of broad admissibility has been adopted by only a small minority of other courts in the United States. Lisa R. Askowitz, Restricting the Admissibility of Expert Testimony in Child Sexual Abuse Prosecutions: Pennsylvania Takes It to the Extreme, 47 U.Miami L.Review 201, 206 (1992). Very recently, the high courts of several jurisdictions, with the benefit of the last seven years of developing case law and the most recent psychiatric and psychological evidence available, have rejected the approach taken by Florida and have adopted more restrictive rules for admission of expert testimony designed to prove that a child has been the victim of sexual abuse.
Florida's approach to this issue was established in 1986, in the case of Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986). There, the issue was whether a physician, who was an expert in child and adolescent psychiatry, should be permitted to testify that the child victim of an alleged lewd assault was suffering from a condition known as "post-traumatic stress syndrome." The child was seven years old and there was no demonstrable physical evidence of an assault. The psychiatrist was allowed to describe post-traumatic stress syndrome to correlate her observations of the victim's behavior with commonly observed behavior patterns of other patients suffering from this syndrome. She testified to the details of the victim's and the victim's parents' statements and concluded that, based upon her psychiatric examination and the history of the child's behavior before and after the alleged assault, the child had suffered a sexual trauma. The psychiatrist acknowledged that her opinion was predicated on the validity of the history given to her by the child and the parents.
Writing for the majority in Kruse, Judge Anstead undertook an analysis of the admissibility of expert opinion testimony in light of Florida's adoption of the evidence code in 1979. The Kruse court concluded that, in light of the adoption of the evidence code, the standard for admissibility of expert testimony, governed by section 90.702, Florida Statutes, was to be based on a "relevancy standard" replacing the earlier, more restrictive requirement of "general acceptance by the scientific community" previously articulated in Frye v. United States, 293 F. 1013 (D.C. Cir.1923). 483 So.2d at 1384. Ultimately, the Kruse court set out a four-prong test to evaluate the admissibility of expert opinion testimony under this new standard and, applying that test, concluded that the opinion evidence sought to be introduced was admissible. Id. at 1384, 1388.[1]
*80 Consistent with Kruse, in 1988, the First District Court of Appeal decided Ward v. State, 519 So.2d 1082 (Fla. 1st DCA 1988), in which a clinical psychologist testified that the "child/victim exhibited symptoms consistent with those of sexually abused children." 519 So.2d at 1083. The expert acknowledged that her opinion was based on her belief that the child was telling the truth and that without such a belief, she would not be able to identify the source of the trauma as sexual abuse. Id.
In Ward, defense counsel argued that the field of knowledge concerning child sexual abuse had not been adequately developed to permit a witness to assert a reasonable opinion that the child had been sexually abused and that, therefore, the true probative value of the testimony was outweighed by its prejudicial effect. Id. The lower court rejected that argument, ruling that the study of child sexual abuse had been sufficiently established to permit an expert to state an opinion as to whether a child's symptoms were consistent with sexual abuse. The Ward court agreed, finding no abuse of discretion in the trial court's ruling that "child abuse syndrome" is an area sufficiently developed to permit an expert to testify that the symptoms observed in the evaluated child were consistent with those displayed by victims of child abuse. Id. at 1084. The court proceeded to make its analysis of admissibility of this evidence based upon the criteria set forth in Kruse.
On the heels of Ward came Brown v. State, 523 So.2d 729 (Fla. 1st DCA 1988), where an HRS child protection team counselor who examined a five-year old was qualified as an expert in the field of child sexual abuse; and the counselor was permitted to testify concerning the signs she generally looked for to determine whether a child had been sexually abused and whether the victim in that case had exhibited any of those signs. The counselor, in fact, testified, "I do believe that [the victim] was sexually abused." Id. at 730. In affirming the conviction, the Brown court noted that it would have been more appropriate for the expert witness to have testified that the victim's behavior was "consistent with" one who had been sexually battered or abused, than to have testified that the victim was sexually abused because a jury would be less likely to misconstrue the expert witness's opinion. Id.
In 1988, the Supreme Court of Florida decided the admissibility issue in Glendening v. State, 536 So.2d 212 (Fla. 1988). In that case, a "coordinator" for a child protection team had been recognized by the trial court as an expert in the area of "interviewing children regarding the subject of child abuse" and had been permitted to render an opinion "within a reasonable degree of professional certainty as to whether or not [the child] had been sexually abused." Id. at 220. The court concluded that the trial court had not abused its discretion in determining that an opinion as to whether the child was sexually abused was within the province of this expert witness. Id. at 220. The court said: "A qualified expert may express an opinion as to whether a child has been the victim of sexual abuse." Id. The court expressly based its conclusion on the analysis of the admissibility of expert testimony previously articulated in Kruse. Id. at 221. Unfortunately, although Kruse had rejected the requirement of general acceptance in the scientific community (the Frye test),[2] the Glendening court made no express reference to Frye or the status of the Frye test in Florida.
Interestingly, within a year of Glendening, Judge Wentworth, who had been a member of the Ward panel, expressed reservations about the use of "child abuse syndrome" evidence:
In the same (unrelated) context as the above cited Gardner treatise, i.e. child sex abuse, we note the cautionary words of other current commentators: "When considering the theory of expert testimony discussed in this subsection, it is vitally important to avoid the confusion engendered by reference to syndromes... . At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse. Use of the word syndrome *81 only leads to confusion, and to unwarranted and unworkable comparisons to battered child syndrome. The best course is to avoid any mention of syndromes." Meyers, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.Review 69 (1989).
In Interest of T.M.W., 553 So.2d 260, 262 n. 3 (Fla. 1st DCA 1989).
Two years later, the First District Court was again presented with a problem of expert psychological testimony. Flanagan v. State, 586 So.2d 1085 (Fla. 1st DCA 1991). This time, the testimony sought to be introduced concerned particular behavioral characteristics of child sexual abuse offenders and characteristics of the home environments in which child sexual abuse frequently occurs. The court's answer was ambivalent. On the one hand, it found the evidence inadmissible based upon the "exacting standards" of Frye but then suggested that the evidence was admissible "to promote juror understanding of a phenomenon which is `not so understandable that people know as much about it as a qualified expert with the requisite skill and exposure to numerous studies in the field,'" citing to Kruse and to Ward. 586 So.2d at 1099-1100. In a prodigious concurring and dissenting opinion, which the Florida Supreme Court later referred to as "an excellent and thorough discussion of this issue,"[3] Judge Ervin made the following observation: "Because I consider that novel psychological syndrome or profile evidence, when offered by the prosecution for a nonrehabilitative purpose ... cannot survive a Frye analysis, Kruse, which held syndrome evidence admissible under the relevancy approach, may have to be reevaluated."[4] Judge Ervin then proceeded to review a substantial number of cases from other jurisdictions that have rejected the use of such expert psychological evidence to prove child sexual abuse and similarly reviewed some of the current legal and other professional literature, after which he concluded that:
Even among those scholars who believe there are typical symptoms and behaviors that result from sexual abuse, there is a lack of consensus regarding the ability of an expert to determine whether a particular child with such traits or symptoms has, in fact, been abused. Perhaps even more pronounced is the lack of agreement among the experts as to the reliability of such profiles.
586 So.2d at 1116. He noted specifically that the Utah Supreme Court had recently surveyed the relevant scientific literature and had observed that many scholars take the position that no uniformly identifiable psychological profiles apply to sexually abused children. Id.
Quite recently, the Supreme Court of Florida issued its opinion in the Flanagan case, and answered the question concerning the continuing vitality of Frye in Florida:
We begin our analysis of the admissibility of this testimony with the basic principle that novel scientific evidence is not admissible in Florida unless it meets the standard established in Frye v. United States, 293 F. 1013 (D.C. Cir.1923).
625 So.2d at 828. Concerning the admissibility of the sexual abuser profile testimony, the court said:
Profile testimony ... by its nature necessarily relies on some scientific principle or test, which implies an infallibility not found in pure opinion testimony. The jury will naturally assume that the scientific principles underlying the expert's conclusion are valid. Accordingly, this type of testimony must meet the Frye test, designed to ensure that the jury will not be misled by experimental scientific methods which may ultimately prove to be unsound.
Id. Unfortunately, the Flanagan court made no allusion to Kruse ... or to Glendening. Interestingly, the court did make reference to the United States Supreme Court's recent decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court rejected Daubert, observing that "Florida continues to adhere to the Frye test for the admissibility of scientific opinions." 625 *82 So.2d at 829, n. 2. Since the Daubert opinion is based on the determination that the old Frye test of "general acceptance in the relevant scientific community" was superseded by the adoption of the Federal Rules of Evidence in 1975,[5] the obvious inference to be drawn is that Kruse is no longer good law in Florida, since Kruse was based on an analysis similar to that adopted in Daubert. Nevertheless, any assumption about the demise of Kruse and Glendening may be exaggerated in light of the even more recent decision of the Florida Supreme Court in State v. Townsend, 635 So.2d 949 (Fla. 1994). Although, in Townsend the court was dealing with a slightly different issue, i.e. a psychologist's comment on the truthfulness of a child witness, the court said, citing to Glendening: "[I]f relevant, a medical expert witness may testify as to whether, in the expert's opinion, the behavior of a child is consistent with the behavior of a child who has been sexually abused." 635 So.2d at 958 (emphasis added).
Given that the ground on which the supreme court's decision in Glendening was based has shifted, perhaps dramatically, it is important to consider what the answer to the admissibility question might be if, indeed, Frye does control.[6] Judge Ervin said that courts that employ the Frye standard generally recognize three methods of proof for determining whether a particular scientific technique has attained general acceptance in the relevant scientific community: expert testimony, scientific and legal writings, and judicial opinions. 586 So.2d at 1112.[7]
No testimony was elicited from the psychologist below concerning general acceptance in the relevant scientific community of the use of symptom patterns to diagnose chronic sexual abuse; however, many courts from other jurisdictions have considered this question. Recently, in State v. Cressey, 137 N.H. 402, 628 A.2d 696 (1993), the New Hampshire Supreme Court considered the admissibility of evidence offered by a Ph.D. who was an expert in the areas of psychology and child sexual abuse who interviewed the alleged child victim and who, based on those interviews, ultimately testified that the children exhibited symptoms "consistent with children who have been sexually abused." Id. 628 A.2d at 698. After reviewing current case law and scholarly writings on the subject, the court held that the psychologist's expert testimony was not sufficiently reliable to be admitted in a criminal trial as evidence that the alleged victim had been sexually abused. The court specifically rejected the argument that there is a material distinction between an opinion given by an expert that a child had been sexually abused based upon the post-trauma symptomatology and testimony that the post-trauma symptoms were "consistent" with those of sexually abused children. Id. 628 A.2d at 699-700. Finally, the court rejected the notion that cross-examination could effectively neutralize the unreliable components of such an expert's testimony. The court observed that, "[i]n such a case, the expert's conclusions are as impenetrable as they are unverifiable." Id. 628 A.2d at 701.
Another lengthy and thorough analysis is found in the opinion of a New Jersey appellate court in the much publicized case of State v. Michaels, 264 N.J. Super. 579, 625 A.2d 489 (Ct.App.Div. 1993), aff'd, 136 N.J. 299, 642 A.2d 1372 (1994), a case involving the conviction of a day-care worker on 115 counts of sexual offenses involving twenty children, based in large measure on testimony of a psychologist who testified that, based on her interviews with the alleged child victims, the statements and conduct of the children were "consistent" with child sexual abuse. Id. 625 A.2d at 499. After reviewing a substantial body of professional literature, and cases recently decided by other courts, including the widely lauded opinion of the New Jersey Supreme Court in State v. J.Q., 130 N.J. 554, *83 617 A.2d 1196 (1993), the Michaels court concluded that the defendant's convictions were obtained by the use of expert testimony that should have been excluded, that no amount of cross-examination could have undone the harm caused by the expert's testimony and that the impact of the error was so overwhelming as to require reversal of the convictions. 625 A.2d at 502.
Although cases such as these and commentary in scholarly legal publications cast doubt on the use of experts in child sexual abuse cases to render opinions that the child's behavior is "consistent with sexual abuse," this issue is necessarily dynamic because of the amount of study underway. Due to the extraordinary difficulty of proving child sexual abuse cases, because of the environment in which they occur, courts should welcome reliable evidence that will aid the jury in understanding this awful crime; on the other hand, our justifiably zealous urge to punish those who commit such appalling acts ought not entice us to use evidence that can have an impact on the minds of the jury far disproportionate to its foundation in science. See Townsend, 635 So.2d at 958.
When asked by the trial court to respond to defense counsel's objection that the psychologist had testified beyond what the court had authorized in the proffer, the prosecutor's response presents an eloquent validation of the Cressey court's skepticism about whether there is a perceptible difference between an expert's testimony that "the child was sexually abused" versus testimony that the child's symptoms are "consistent with" sexual abuse:
Judge, I proffered her testimony to indicate that based upon her opinion [the victim] was consistent with her interviews and her feelings are that she is consistent with the patterns that  we're probably not wording it right  consistent, she shows consistent signs of sexual abuse that is what she testified to in the proffer. And as a result of that, she is suffering from the post-traumatic stress disorder.
Given the fact that the supreme court's decision in Flanagan may have invalidated the premise of Kruse on which Glendening was based, given that it appears that Florida requires general acceptance by the relevant scientific community as a predicate for introduction of psychological evidence like the evidence used in the present case, and given the considerable doubt that has been cast on such testimony, it may be time to reexamine the use of such evidence in Florida courts.
AFFIRMED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] The court gave Kruse a new trial on other grounds, however.
[2] See Holiday Inns, Inc. v. Shelburne, 576 So.2d 322, 335 (Fla. 4th DCA 1991).
[3] Flanagan v. State, 625 So.2d 827, 828 (Fla. 1993).
[4] Flanagan, 586 at 1109 n. 19.
[5] Robert F. Blomquist, The Dangers of General Observations on Expert Scientific Testimony: A Comment on Daubert v. Merrell Dow Pharmaceuticals, Inc., 82 Ky.L.J. 703 (1993-94).
[6] See State v. Malarney, 617 So.2d 739, 741-42 (Fla. 4th DCA 1993) (Dimitrouleas, W., Associate J., concurring and dissenting).
[7] An example of how such an analysis would be made can be found in Vargas v. State, 640 So.2d 1139 (Fla. 1st DCA 1994).