MICKLE, Judge.,
dissenting with opiMon.
I agree with the majority’s conclusion that Hadden, 690 So.2d at 574, which was issued after the appellant’s trial, renders erroneous the admission of expert testimony that the alleged child victim exMbited symptoms consistent with those of a child suffering from child sexual abuse accommodation syndrome. However, having reviewed the other evidence that was properly heard by the jury, I believe that any error in admitting into evidence expert testimony is harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
The suspicion of sexual activity between the appellant and his oldest daughter arose shortly after the victim’s handwritten diary was accidentally discovered hidden between the mattresses by one of her brothers. The 15-year-old brother testified that when he inquired about the diary, the victim imtially claimed that it was “nothing.” In testimony consistent with her brother’s rendition of events, the victim’s 12-year-old sister testified that she had shared a room with the victim in 1991-94. The sister indicated that one day, while she and her brother were eleamng the bedroom and switeMng beds, the brother had discovered their sister’s diary under a mattress. After reading portions of the diary detailing the sexual abuse, the brother confronted the victim, who started crying and stated that their father “would kill her if momma found out.” Two weeks after the discovery, the brother handed over the diary to his mother. The brother testified also that on one occasion about a year before he found the diary, the victim had admitted that their father “had been messing with her.” Although the victim asked her brother to give it back to her, he took the diary to their mother, after which H.R.S. investigators became involved in the case.
The victim testified that she had begun the diary at age 12 or 13 after becoming aware, through classroom instruction, of what is proper behavior vis-a-vis abnormal activities. She had not intended for anyone else to see the diary, for the appellant had threatened to *1358 kill her and anyone else who knew “[w]hat was going on,” including the fact that he was touching her. She had felt like “talking to the diary” because she did not wish to discuss those sexual incidents with anyone else.
Count One charged sexual battery by penile-vaginal intercourse. The 14-year-old victim testified that the appellant had penetrated her vagina with his penis during a one-year period from 1993 to 1994 (starting around her 12th birthday) and that the activity was painful. Sometimes the appellant would insert his finger into the victim’s vagina. Those events occurred in the appellant’s room when the victim was completely undressed and alone with him. The episodes happened mostly in the morning and always when the appellant’s girlfriend (the children’s mother) was away. The appellant had explained to her that he “would show [her] what love was.” The victim testified further that prior to that activity with the appellant, she had not had any sexual activity with anyone else and that, as a result, she bled onto the bed. The examining physician, Dr. Neil McWilliams, a pediatrician with 23 years’ experience, corroborated the victim’s testimony with findings that the physical condition of the young victim’s genitalia was consistent with that of a sexually active woman, but abnormal for a child. The victim’s hymen was completely absent, and the edges of the vaginal opening had multiple tears, which indicated to the doctor that something had entered and destroyed the protective membrane. Dr. McWilliams opined that the vagina had been penetrated. He testified that when the hymen is first broken, bleeding often occurs, and that sexual intercourse for a virgin of the victim’s age would be expected to cause pain. The physician’s opinions and conclusions are consistent with the particular symptoms described by the victim.
Count Two charged a lewd and lascivious act by exhibiting the sexual organ and masturbating in front of the victim. The victim testified that after engaging in intercourse without ejaculating, the appellant would masturbate in front of her. The victim remembered also that the appellant had placed her hand on his penis more than once before she turned 12.
Count Three charged a lewd and lascivious assault by fondling and caressing the victim’s breasts, sexual organs, or vaginal area. The victim testified that the appellant had rubbed her breasts with his bare hand while she was unclothed and that he had put his hands in her genital area and had digitally penetrated her. A ‘Williams Rule” witness, the victim’s 12-year-old sister, corroborated the victim’s testimony in several key respects relating to Count Three. The witness described her sexual encounter with the appellant in terms suggesting that the location and circumstances were strikingly similar to those involving her older sister, even though the appellant’s activities with the witness were more limited. For instance, the younger sister testified that when she was 11, the appellant had instructed her to turn out the lights and to come to his dark room, where he threw her onto the bed and jumped on top of her. After asking if she loved him, the appellant kissed her on the cheek first and then on the lips. The appellant touched, hit, and rubbed the younger sister in her chest area and called her flat-chested. When the appellant asked whether the sister had any hair on her “privates,” and she said nothing, the appellant said “Show me.” He added, “This is between me and you.” Eventually, the appellant told the younger sister that he was not going to mess with her because she had a big mouth and would tell her mother everything. As the younger sister sat there, the appellant went to the bathroom, whereupon the telephone rang and she left the room. After the younger sister informed her mother about what had happened, the appellant did not bother her anymore.
The appellant’s long-time girlfriend, who is the mother of the children, testified that in 1993-94, the appellant had stayed at home earing for the children while she worked outside the home in a job that sometimes required her to leave home as early as 4:45 A.M..
Patricia Haley, an H.R.S. protective investigator, testified that when she initially met with the victim, who was then 13 years old, the girl seemed very afraid. The victim told *1359 Haley that the appellant had performed sexual acts upon her in the bedroom that he shared with the victim’s mother. The child indicated that she and the appellant had had sexual intercourse 10 times and that he had made her beat his penis. The victim was afraid for herself and her family because the appellant had threatened to Mil her if she said anything.
In Hadden, the Supreme Court of Florida stated that its finding of error in the admission of the syndrome evidence did not necessarily mandate reversal. Nevertheless, after considering “the context of the entire case” and applying the DiGuilio test, the Hadden court was unable to conclude that the admission of the syndrome evidence was harmless. Id. at' 581. I believe that Hadden is factually distinguishable from the ease at bar in several material respects. The only direct evidence connecting Hadden to the crimes was the victim’s testimony and Hadden’s confession. “The evidence consisted essentially of a ‘swearing match’ between Hadden and the victim,” and closing arguments focused on their respective credibility. Hadden took the stand in his own behalf and denied having given a confession. There was no medical evidence substantiating the alleged sexual abuse. Hadden v. State, 670 So.2d 77, 91-92 (Fla. 1st DCA 1996) (Ervin, J. dissenting).
In contrast to Hadden, in the instant case the victim’s testimony was supported by independent corroboration by her younger sister, by her brother, by her examining physician, and by the H.R.S. protective investigator. The appellant chose not to testify; therefore, the evidence did not consist of “essentially a swearing match,” as occurred in Hadden. Id., 670 So.2d at 91 (Ervin, J., dissenting). The testimony of the victim’s mother supported the victim’s claim that the appellant was left alone with the children on many occasions and had opportunities to commit the charged acts. Because I believe that the aforementioned evidence conclusively refutes the appellant’s argument that there is a reasonable probability that the admission of expert testimony affected the verdict, I respectfully dissent. I would affirm the judgment of conviction and sentence,